JUAN CARLE GARCÍA, apelante, recurrente y recurrido, *v.* SUPERINTENDENTE DE LA POLICÍA, apelado, recurrido y peticionario.

*Número:* O-83-304    *Resuelto:* 20 de octubre de 1983

*Miguel Pagán, Procurador General Interino,* y *Doris M. Santiago,* abogada del Departamento de Justicia, abogados del peticionario; *Héctor A. Feliciano Carreras* y *José L. Purcell Terrón,* abogados del apelante recurrido.

## RESOLUCIÓN

A la anterior petición de *certiorari*, no ha lugar.

Lo acordó el Tribunal y certifica la señora Secretaria

General. El Juez Asociado Señor Negrón García emitió voto explicativo. El Juez Asociado Señor Díaz Cruz no intervino.

(*Fdo.*) Lady Alfonso de Cumpiano
*Secretaria General*

—O—

Voto explicativo emitido por el Juez Asociado Señor Negrón García.

Estamos conformes con proveer no ha lugar al recurso y, de ese modo, aunque basados en algunos fundamentos distintos, confirmar el dictamen del tribunal de instancia.

I

Juan Carle García, nacido en la isla de Vieques ingresó a la Policía en diciembre de 1958. Con el transcurso del tiempo se desempeñó allí, en otras municipalidades y diversos sectores del Área Metropolitana. Mediante varios ascensos, el 1 de abril de 1977 alcanzó el grado de teniente primero. Con este rango, desde el 19 de febrero de 1976 estaba a cargo y ocupaba el puesto de comandante del Distrito de Vieques. Allí residía y tenía constituido su núcleo familiar, integrado por su esposa y dos hijos menores.

Carle García era estimado entre la ciudadanía viequense. Sus ejecutorias eran excelentes. Las evaluaciones de la División de Personal eran muy buenas. Estaba considerado como un magnífico oficial.

La comunidad de Vieques experimentó durante su incumbencia (1976–1980) múltiples incidentes relacionados con las protestas de un grupo de ciudadanos contrarios a las maniobras que allí realiza la Marina de los Estados Unidos. En esos acontecimientos y período se desempeñó eficientemente. Aun así, la presencia e intervención necesaria de la Policía, expuesta en múltiples ocasiones a grave tensión y violencia, motivó que durante esos incidentes la comandancia de la Policía enviara un oficial de rango de capitán para

provisionalmente asumir el mando directo y dirigir las operaciones encaminadas a garantizar la paz y el orden público.

En esa época la administración municipal estaba dirigida por el alcalde señor Radamés Tirado, del Partido Nuevo Progresista (P.N.P.). Lamentablemente entre dicho funcionario y el teniente Carle no existían las mejores relaciones. Carle estaba identificado con el Partido Popular Democrático. Varias personas residentes de esa isla, simpatizantes de ambos partidos políticos, fueron testigos de que en diversas ocasiones, lugares, fechas y actividades, el alcalde señor Tirado manifestó su desagrado ante la presencia del teniente Carle en Vieques y su intención de que agotaría todos los medios a su alcance para trasladarlo de la isla.

Así las cosas, dos meses antes de las elecciones de 1980, en el mes de agosto, tanto el Superintendente de la Policía, Sr. Desiderio Cartagena, como el Gobernador de Puerto Rico, Hon. Carlos Romero Barceló, visitaron dicha isla y estuvieron reunidos con el alcalde señor Tirado. Días después, el 19 de agosto, se materializó su traslado inmediato. La notificación se originó en el Cuartel General de San Juan por el coronel Raúl González Fernández, entonces director del Negociado de Operaciones de Campo, por conducto del Comandante de Área de Humacao. Invocó como razón "exigencias del servicio".

Subsiguientemente se adujo que el cambio respondió a un estudio no escrito que reveló la necesidad de elevar a capitán el rango de Comandante de Distrito de Vieques y así evitar tener que estar enviando un oficial de esa jerarquía cada vez que ocurría un incidente. Para sustituirlo transfirieron a Vieques al capitán Víctor Ortiz Lebrón, Placa Núm. 6-4846 —ascendido a la sazón—, quien anteriormente prestaba servicios y residía en Caguas. También, en calidad de auxiliar del capitán Ortiz trasladaron al teniente Marrero, quien prestaba servicios en Caguas y

había solicitado ser movido a Humacao o donde residía, Ceiba.

Con posterioridad al traslado, el teniente Carle sufrió un severo ataque de alta presión. Por recomendación médica se encuentra en licencia por enfermedad bajo tratamiento en el Fondo del Seguro del Estado.

## II

Inconforme, apeló a la Junta de Apelaciones del Sistema de Personal (JASAP). Alegó que el traslado tuvo motivaciones políticas, era arbitrario, irrazonable y oneroso. La Junta resolvió que no aplicaban a la Policía las disposiciones sobre traslado contenidas en la Ley de Personal del Servicio Público, Núm. 5 del 14 de octubre de 1975. No obstante, asumió jurisdicción para examinar la alegación de discrimen político y determinó que la prueba presentada demostró que el cambio obedeció a necesidades del servicio.

De ese dictamen Carle García acudió al Tribunal Superior. Además de reiterar sus alegaciones, cuestionó la negativa de la Junta a celebrar sesiones en Vieques, según su solicitud. El tribunal la revocó. Concluyó que el traslado era arbitrario, irrazonable y oneroso, constitutivo de una crasa violación a su derecho constitucional al debido procedimiento de ley. Añadió que no existía ninguna disposición estatutaria ni reglamentaria, a la fecha del traslado, que previera las "necesidades del servicio" o "cambio de rango" como base para el traslado de un agente de la Policía. Sobre la alegación de discrimen político, el foro judicial de instancia expresó que los hechos del caso tendían "a levantar la inferencia de que alguna influencia de carácter político pudo existir".

El Superintendente de la Policía recurre ante nos. Argumenta que erró el tribunal al no resolver la inaplicabilidad de las disposiciones sobre traslado de la Ley de Personal a los miembros del cuerpo de la Policía y determinar que el despido fue arbitrario, oneroso e irrazonable. Tam-

bién ataca las expresiones relativas a la alegación de discrimen político. Por su parte, el recurrido Carle García se opone, y nos pide que declaremos inconstitucional la disposición referente a traslados, a base de que hace una distinción impermisible entre los policías y el resto de los empleados públicos.

## III

La Policía de Puerto Rico es un administrador individual. Como tal, con sujeción a las disposiciones de la Ley de Personal y otras aplicables, tiene la responsabilidad de administrar directamente y con cierta autonomía todo su personal en las áreas esenciales al principio de mérito.

Con referencia al área de los *traslados* la versión original del estatuto de personal (1975) leía:

(5) Los traslados no podrán ser utilizados como medida disciplinaria ni podrán hacerse arbitrariamente. Sólo podrán hacerse a solicitud del empleado, o cuando respondan a necesidades del servicio según se establezca mediante reglamento, y el traslado no resulte claramente oneroso para el empleado.

La Ley Núm. 1 de 17 de julio de 1979 introdujo varias enmiendas significativas: eliminó del texto la palabra "claramente" y añadió *in fine*, que se "exceptúan de esta disposición aquellos sistemas en que se utilice el concepto de rango". Además adicionó el siguiente apartado:

(9) En aquellos sistemas en que se utilice el concepto de rango, se podrá utilizar el traslado, descenso o degradación como medida *disciplinaria* siempre y cuando sus leyes orgánicas lo autoricen. En estos casos no se requerirá el consentimiento del empleado. (Énfasis nuestro.) 3 L.P.R.A. sec. 1334.

Resulta obvio que la administración de personal en la Policía de Puerto Rico, excepto sus empleados civiles, se rige por el concepto de rango. 25 L.P.R.A. sec. 1008. Por ende, está excluida de la rigurosidad y exigencias ordinarias relativas al sistema de traslado. Las complejidades y

urgencia de su misión justifican a cabalidad reconocerle esa flexibilidad operacional y movilidad en su personal.

Para fines funcionales la Policía ha sido internamente organizada a base de una división geográfica de la Isla en nueve (9) *Comandancias de Área.* La correspondiente a Humacao incluye los distritos (municipios) de Humacao, Yabucoa, Maunabo, Las Piedras, Fajardo, Ceiba, Vieques, Culebra y Luquillo. Estos distritos son dirigidos por un oficial con rango "no mayor de capitán", a discreción del Superintendente.

Bajo el esquema descrito, el Superintendente de la Policía no designa a los miembros de la Fuerza en municipios específicos. Los asigna a aquella Comandancia de Área en que sus servicios son requeridos, área que, según hemos visto, comprende varios pueblos integrados e identificados como distritos. A su vez, corresponde al Comandante de Área determinar de ordinario el lugar específico de trabajo y las funciones de cada policía y oficial.

Sin embargo, la exclusión de la Policía de algunas disposiciones de la Ley de Personal no implica que los traslados puedan hacerse arbitraria ni caprichosamente. Bajo un régimen constitucional ninguna ley puede autorizar o legitimar actos de esa naturaleza. En términos generales sería *arbitraria* toda acción del Superintendente o sus subalternos carente de una legítima justificación o nexo racional conforme las mejores normas de administración pública o exigencias (necesidades) del servicio, o aquella basada en persecución o consideraciones político-partidistas ajenas a los méritos de la determinación. Observamos, además, que aun en agencias en que impera el sistema de rango, el traslado, como medida disciplinaria, sólo sería permisible si sus leyes orgánicas lo autorizan y, claro está, el empleado abiertamente ha incurrido en una falta. No existe esa facultad en la Ley de la Policía. Por ende, no puede recurrirse al traslado como medida disciplinaria.

Ahora bien, contrario a la conclusión del tribunal de

instancia, dicha ley consagra el criterio de "necesidades del servicio" como razón de ser y convalida la adopción de determinados cursos administrativos en variadas instancias. Arts. 11; 18(c)(2) y 18(f); 19(c)(2) y 19(e). 25 L.P.R.A. secs. 1011; 1018(c)(2) y 1018(f); 1019(c)(2) y 1019(e). Ciertamente, la legitimidad de un traslado por necesidades o exigencias del servicio es una facultad implícita en toda agencia.

La frase "necesidades o exigencias del servicio" acuña una realidad eminentemente pragmática, de carácter relativo y flexible. En distintos momentos puede conllevar diferentes significados y grados. Abarca tanto situaciones imperiosas e inevitables —en que la libertad de acción es casi ninguna y no existe otro curso de acción— como aquellas medidas útiles y aconsejables. A su vez tales necesidades o exigencias del servicio pueden clasificarse de razonables, prácticas, económicas, etc. El abanico de posibilidad y situaciones es amplio. No puede ser limitado a priori. (¹)

Por la peculiar naturaleza de la fuerza policíaca es cognoscible el interés legislativo de imprimir en su organización la mayor elasticidad operacional posible. La Ley de la Policía concede amplia discreción administrativa al Superintendente para determinar' y requerir un traslado de un miembro de la Fuerza aun contra su voluntad. (²) Aunque el

---

(¹) Bajo esta óptica nos resulta difícil convenir con el enfoque restrictivo del tribunal de instancia cuando cita a JASAP en el caso Núm. T-79-606, *Salvador Casiano* v. *Policía*, que resolvió que un traslado era oneroso e irrazonable a menos que mediare una de las siguientes circunstancias: (1) que el traslado hubiese violado alguna disposición de la ley o del reglamento; (2) que hubiera violado alguna disposición de la ley o Reglamento de la Oficina Central de Administración de Personal; (3) que el trabajo del trasladado en el sitio de donde lo trasladaron resultaba en un riesgo inminente para su vida y/o la de sus familiares; (4) que hubiere problemas de relaciones entre el trasladado y otras personas bajo su comando o supervisión; (5) que hubiere problemas de relaciones oficiales entre el trasladado y sus superiores; y (6) que hubiere problemas entre el trasladado y la comunidad donde ejercía su trabajo.

(²) Bajo el Reglamento aprobado el 4 de mayo de 1981 se establecen expresamente los objetivos, el ámbito y las normas para regir los traslados.

policía es un sujeto protegido constitucionalmente —*Pueblo v. Caro González*, 110 D.P.R. 518 (1980)— forma parte de ese grupo de funcionarios sobre los cuales un interés superior comunitario les impone mayores exigencias y restricciones en contraste con otros servidores públicos. Véase, *Hermina González v. Srio. del Trabajo*, 107 D.P.R. 667 (1978). No encontramos ni se nos ha señalado persuasivamente que la exclusión de los criterios limitativos sobre traslados de la Ley de Personal sea una clasificación o actuación legislativa injustificada, carente de base o nexo racional con el propósito legislativo. No adolece de endeblez o deficiencia constitucional.

En el caso de autos el traslado del teniente Carle García al Distrito de Humacao, por la peculiaridad de residir en la isla de Vieques, le impuso unos gravámenes mayores que los de ordinario. Se vería precisado a una transportación limitada y más costosa por aire o mar. Esta onerosidad, producto del cambio, no podía oponerla como freno limitativo a la autoridad nominadora. A lo sumo, sería uno de los múltiples factores a tomarse en la configuración de esa decisión discrecional.

> Se toma en consideración siempre el área de trabajo, la posición que ocupa el policía, el rango que tenga, su necesidad en términos de sector donde va a operar, las necesidades de transportación, si alguna; toda una serie de necesidades básicas que hay en relación a un movimiento de una persona y entendiendo cuál es la política pública de la agencia para reubicar su personal en términos de los servicios que deben prestarse en una unidad de trabajo. (Testimonio del coronel Raúl González Fernández; T.E. de 6 de mayo de 1981, pág. 17.)

Recapitulando. La superintendencia de la Policía tiene amplia discreción gerencial para ordenar traslados basados en las variadas necesidades del servicio. De ordinario, los tribunales no intervendrán con el ejercicio y sabiduría de esa facultad. La fluidez situacional en la preservación del

orden, la paz y la tranquilidad le imponen una singular movilidad a su personal.

## IV

Lo expuesto bastaría para que el Poder Judicial se abstuviera de mediar y se involucrara con el traslado del teniente Carle García. Sin embargo, la prueba revela una inferencia de que en tal decisión el entonces alcalde señor Tirado influyó por razones de carácter político. Independientemente de que haya sido o no de tipo discriminatorio, el Art. 22 de la Ley de la Policía prohíbe tal proceder. (³) Es contrario a la intención legislativa. Esa presunción no quedó rebatida. Acertadamente el tribunal de instancia expresó:

> Al examinar la prueba que se presentó ante JASAP en este caso, le llama la atención a este Tribunal el hecho probado de que, no obstante la apelada-recurrida alegar que el traslado del apelante-recurrente obedeció a una supuesta necesidad de elevar a Capitán el rango del Comandante del Distrito Policíaco de Vieques (no pasaremos juicio sobre los méritos de esta determinación), lo cierto es que han mantenido otra plaza de Teniente en Vieques en adición a la de Capitán.

> Nos preguntamos: ¿si no se podía ascender al Teniente Carle a la plaza de Capitán, qué impedía mantenerlo en la otra plaza de Teniente?

> La Policía lo que hizo, según demuestra la prueba ante nos, fue que asignó a Vieques a otro Teniente que estaba en Caguas y que había pedido voluntariamente un traslado para Humacao. ¿Por qué no asignaron a Humacao a dicho Teniente (que lo había solicitado), a la plaza o posición a la cual asignaron al aquí recurrente, y podían así mantener al Teniente Carle en Vieques? No acertamos a entender estos

---

(³) En el acápite pertinente reza:

"Constituirá delito menos grave la intervención indebida de cualquier persona ajena a la Policía o que carezca de autoridad o facultad supervisora o nominadora en la Policía que utilizando ventaja político partidista o *influencias indebidas* pretende por motivos ajenos a los mejores intereses de la Policía obtener ingreso, reingreso, ascenso, *traslado*, despido, descenso o cualquier acción para el beneficio o perjuicio de algún miembro de la Policía. . . ." (Énfasis suplido.) 25 L.P.R.A. sec. 1022(c).

movimientos de personal efectuados por la Policía de Puerto Rico en el presente caso.

A este razonamiento debemos añadir. Durante cuatro (4) años la situación en Vieques prevaleció igual. En incidentes de protestas se envió a un capitán para asumir provisionalmente la dirección distrital. Curiosamente el traslado se acordó y materializó a raíz de la visita a Vieques de la máxima jerarquía de la Policía, incluso el Primer Ejecutivo. Dicho cambio se implementó por orden directa e inmediata que emanó del Cuartel General. El estudio que supuestamente lo justificó fue verbal (sobre el terreno). En conciencia, no tenemos otra alternativa que confirmar la ilegalidad del traslado y la sentencia recurrida mediante un no ha lugar.