RUDERSINDO TORRES ARZOLA, apelante y recurrido, *v.* POLICÍA DE PUERTO RICO, apelada y peticionaria.

Número: CE-85-714        Resuelto: 11 de abril de 1986

*Rafael Ortiz Carrión, Procurador General, Doris Zoé Pons Pagán, Procuradora General Auxiliar,* abogados de El Pueblo; *Luis Murphy Maldonado,* abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

El Procurador General radicó una petición de *certiorari* para solicitar que revocáramos la resolución del Tribunal Superior en que se ordenaba al Superintendente de la Policía de Puerto Rico que reinstalara al Sr. Rudersindo Torres Arzola en el área de Ponce de dicho cuerpo. Conforme a los fundamentos expresados en la presente opinión, revocamos la decisión del tribunal a quo.

I

El recurrido, señor Rudersindo Torres Arzola se desempeñó hasta el 1982 como técnico en fotografía criminal en el Departamento de Huellas y Fotografías del Cuerpo de Investigaciones Criminales adscrito al área de Mayagüez. En abril de ese año fue destituido por el Superintendente de la Policía por guardar en su residencia una prueba evidenciaria de

fragmentos de huellas digitales sin enviarlas a la Unidad Monodactilar del Laboratorio Criminal para que pudieran ser presentadas en evidencia en un caso criminal.

Se le imputó que como resultado de su "actuación negligente . . . la persona que fue acusada por los hechos delictivos . . . result[ó] no culpable por insuficiencia de prueba". *Exhibit* V, pág. 13. También se le formularon cargos por no asistir con regularidad y puntualidad al trabajo ni observar normas de comportamiento correcto en sus relaciones con los compañeros de trabajo. Al momento de su destitución el recurrido trabajaba en el área de Ponce.

Su destitución fue confirmada por la Junta de Apelaciones del Sistema de Administración de Personal mediante resolución del 24 de agosto de 1983. De esta resolución el señor Torres Arzola recurrió en revisión al Tribunal Superior y el 3 de julio de 1984 se dictó sentencia que disminuía el castigo a tres (3) meses de suspensión de empleo y sueldo. También se le ordenó al Superintendente de la Policía que lo repusiera en su puesto y le abonaran el salario y los beneficios que dejó de recibir a partir del día en que debió concluir la suspensión.

Lo reinstalaron en Mayagüez y el 1 de marzo de 1985 radicó Moción de Desacato contra el Superintendente con la alegación de que tenían que adscribirlo al área de Ponce. En la vista celebrada por el Tribunal Superior el Superintendente alegó que el traslado a Ponce del señor Torres Arzola antes de su despido fue una transferencia administrativa y que su puesto siempre estuvo adscrito al área de Mayagüez. Luego de oír la prueba ofrecida por cada parte, el Tribunal Superior ordenó que se reinstalara al señor Torres Arzola en un puesto en el área de Ponce. De esta resolución del Tribunal a quo recurre el Procurador General para cuestionar la determinación del tribunal y su impacto sobre las operaciones del cuerpo policiaco. Alega el Procurador General que al señor Torres Arzola se le reinstaló en el puesto, adscrito al área de

Mayagüez que ocupaba antes de su destitución. También reclamaron que el Superintendente tiene amplios poderes gerenciales para ordenar traslados por razones de servicio. Después de examinar la petición de *certiorari*, el 31 de octubre de 1985 emitimos la siguiente resolución:

> Visto el recurso de *certiorari* y la moción en auxilio de jurisdicción que lo acompaña, se ordena la paralización de la vista sobre Moción de Ejecución de Sentencia y Desacato señalada para el día 1ro. de noviembre de 1985 a las 9:00 A.M. en la Sala III del Tribunal Superior, Sala de Mayag[ü]ez.
>
> Se concede término de veinte (20) días al recurrido para que muestre causa por la cual la resolución dictada por el Hon. Juez Benito Díaz Laureano de 24 de julio de 1985 no deba ser revocada a tenor con el Reglamento de la Policía de Puerto Rico y el estado de Derecho vigente en materia de traslado de empleados públicos.
>
> Se concede, a su vez, término de veinte (20) días a la parte apelada-recurrida-peticionaria para que comparezca y muestre razones que justifiquen la dilación observada en el trámite bajo nuestra consideración.

Tanto el recurrido como el Procurador General han comparecido mediante contestación a nuestra resolución. Luego de estudiar ambas comparecencias, estamos en posición de resolver esta controversia.

## II

En su comparecencia el recurrido cuestiona la radicación tardía del *certiorari* sin haber presentado una razón para justificar su demora. En nuestra resolución del 31 de octubre de 1985 le ordenamos al Procurador General que justificara, "la dilación observada en el trámite [de este recurso]".

En su comparecencia el Procurador General nos informa que la dilación se debió a que el Fiscal Felipe Algarín tenía también a su cargo el caso del *Estado Libre Asociado* v. *Corporación de Servicios Hospitalarios de Fajardo*, en el cual se

celebraron ininterrumpidamente vistas entre el 20 de agosto y el 12 de septiembre de 1985.

▉▉▉ Aunque nuestras leyes no proveen un término procesal para la radicación de un *certiorari* clásico, es aplicable la doctrina de incuria (*laches*). Este Tribunal ha aplicado la doctrina de incuria (*laches*) con firmeza para denegar el auto, si la demora en solicitar el *certiorari* es indebida e injustificada:

> . . . Claro está, no basta el transcurso de un tiempo determinado para que exista lo que se denomina técnicamente incuria o *laches*. Es imprescindible que la conducta negligente del peticionario, al no promover con prontitud y diligencia la expedición del auto, haya causado una demora innecesaria e indebida que de hecho perjudica a las demás personas interesadas. Adviértase que la teoría de *laches* envuelve dos elementos: (1) la dilación injustificada en la presentación del recurso; y (2) el perjuicio que ello pueda ocasionar a otras personas, según las circunstancias. Además, hay que considerar el efecto que tendría la concesión o la denegación del auto sobre los intereses privados y sociales en presencia. Cuando la demora no perjudica a nadie o el perjuicio causado es leve, si se le compara con el daño que sufriría el peticionario o el público en caso de no librarse el auto, el lapso de tiempo transcurrido tiene que ser grande para que exista la incuria equitativa. En cambio, aunque la dilación sea relativamente corta, si resulta en detrimento para el interés público o los derechos individuales del acusado, procede denegar el auto a base de la doctrina de *laches*. Sobre todo[,] es preciso tener en cuenta los méritos y demás circunstancias del caso específico, ya que la doctrina de incuria sigue vinculada a la idea fundamental de la equidad: se acude a la "razón" y a la "conciencia" para encontrar soluciones justas, apartándose del rigorismo intransigente de los términos fatales. *Pueblo* v. *Tribl. Superior*, 81 D.P.R. 904, 912 (1960).

En este caso, sin embargo, el Procurador General ha justificado adecuadamente su demora en acudir ante esta curia. El señor Torres Arzola no ha sido perjudicado, ya que

fue reinstalado a un puesto en Mayagüez. Por otro lado, la naturaleza de la controversia jurídica en que está envuelta la autoridad del Superintendente para efectuar traslados dentro de la Policía hace imperativa nuestra adjudicación de esta controversia.

## III

■ La Policía de Puerto Rico es un administrador individual y como tal tiene la responsabilidad de dirigir los asuntos relacionados con la aplicación de la Ley de Personal del Servicio Público de Puerto Rico a los miembros de dicho cuerpo. A través de la Ley de Personal la Asamblea Legislativa le delegó a varias agencias, entre ellas la Policía de Puerto Rico, el poder para administrar los asuntos relacionados con las áreas esenciales al principio de mérito, mediante un reglamento autónomo que estuviese en armonía con los principios rectores de la Ley.

■ Uno de los aspectos fundamentales de la Ley es lo pertinente a los traslados. Su Sec. 4.4 prohíbe que los traslados se utilicen como medidas disciplinarias o que se hagan en forma arbitraria. Sin embargo, la Ley exime específicamente de esta prohibición a las agencias, como la Policía, que utilicen el sistema de rango para clasificar a sus miembros:

> (5) Los traslados no podrán ser utilizados como medida disciplinaria ni podrán hacerse arbitrariamente. Sólo podrán hacerse a solicitud del empleado, o cuando respondan a necesidad del servicio según se establezca mediante reglamento, y el traslado no resulte oneroso para el empleado. Se exceptúan de esta disposición aquellos sistemas en que se utilice el concepto de rango.
>
> .    .    .    .    .    .    .    .
>
> (9) En aquellos sistemas en que se utilice el concepto de rango, se podrá utilizar el traslado, descenso o degradación como medida disciplinaria siempre y cuando sus leyes orgánicas lo autoricen. En estos casos no se requerirá el consentimiento del empleado.— 3 L.P.R.A. sec. 1334.

■ La intención del legislador fue delegar amplios poderes en materia de traslado a las dependencias que utilicen el sistema de rango. La delegación de estos poderes a la Policía de Puerto Rico contiene normas adecuadas que sirven de guía y limitan el uso del poder de traslado. *López* v. *Junta Planificación*, 80 D.P.R. 646 (1958) ; *Hilton Hotels* v. *Junta Salario Mínimo*, 74 D.P.R. 670 (1953).

■ Cuando las leyes habilitadoras de las agencias del Gobierno contienen normas amplias y generales es deseable que a través de la promulgación de reglamentos se definan los contornos y el alcance de sus poderes. Una vez el organismo administrativo ha definido los contornos de su acción a través de reglamentos debidamente promulgados, le corresponde aplicarlos celosamente. La aprobación de reglamentos a su vez facilitará la revisión judicial, especialmente en aquellas áreas donde el ámbito de discreción delegado es excesivo. *Amalgamated Meat Cutters & Butcher Work.* v. *Connally*, 337 F. Supp. 737 (D.C. 1971).

■ Al excluir a organismos como la Policía del alcance de la Sec. 4.4 de la Ley de Personal, la Asamblea Legislativa reconoció que esos cuerpos requieren una flexibilidad operacional y total movilidad de su personal para responder rápidamente a las necesidades del país. Por la naturaleza de la Policía es entendible el interés legislativo de otorgarle a sus funcionarios la mayor flexibilidad posible en los aspectos operacionales que rigen el traslado de sus miembros. Anteriormente en un voto explicativo el Juez Asociado Señor Negrón García examinó estos requisitos y concluyó que:

> La frase "necesidades o exigencias del servicio" acuña una realidad eminentemente pragmática, de carácter relativo y flexible. En distintos momentos puede conllevar diferentes significados y grados. Abarca tanto situaciones imperiosas e inevitables —en que la libertad de acción es casi ninguna y no existe otro curso de acción— como aquellas medidas útiles y aconsejables. A su vez[,] tales necesidades o exigencias

del servicio pueden clasificarse de razonables, prácticas, económicas, etc. El abanico de posibilidad y situaciones es amplio. No puede ser limitado a priori. (Voto explicativo del Juez Asociado Señor Negrón García.) *Carle García* v. *Supte. de la Policía*, 114 D.P.R. 667, 673 (1983).

■ Sin embargo, la exclusión de los cuerpos con clasificaciones a base de rangos no implica que el Superintendente tendrá poderes absolutos para traslados caprichosos de sus miembros. La Policía dio cumplimiento al mandato legislativo estableciendo un reglamento de personal que delimita el alcance de estos poderes. La Sec. 13.2 de su reglamento establece las normas para regir los traslados y prohíbe que se hagan "como medida disciplinaria" o arbitrariamente. *Reglamento de Personal*, Policía de Puerto Rico, Sec. 13.2(3).

Se establecen también unas normas procesales que rigen los traslados en dicho cuerpo para garantizar la imparcialidad en el proceso decisional. El reglamento requiere que al afectado se le informe por escrito con treinta (30) días de antelación, excepto en circunstancias de emergencias. También requiere que "[a]l notificar a un empleado sobre la decisión de traslado deberá advertírsele sobre su derecho a apelar ante la Junta, dentro del término de treinta (30) días". Sec. 13.2(3) (f) y (g).

Así pues, la Policía de Puerto Rico no puede trasladar a ninguno de sus miembros arbitraria y caprichosamente. Tiene que aplicar las normas trazadas en la Ley de Personal de Puerto Rico y la Sec. 13.2 del Reglamento de la Policía de Puerto Rico.

■ El reglamento prohíbe que se utilice el traslado como medida disciplinaria y los limita a los que responden a necesidades del servicio. Sec. 13.2(3) (b).

■ En casos en que se trate de los traslados, los tribunales deben limitar el grado de su intervención y así permitir que el sistema pueda responder adecuadamente a las necesi-

dades del país de fortalecer los programas de seguridad pública. Su intervención debe ser limitada a evitar actuaciones arbitrarias y caprichosas o en violación a los reglamentos de la entidad o para garantizar la protección y el respeto de los derechos consagrados en las constituciones del Estado Libre Asociado y de Estados Unidos de América.

## IV

El Procurador General aduce que el tribunal a quo erró al ordenar que se reinstalara al señor Torres Arzola a un puesto específico en el área de Ponce. Alega que la prueba admitida revela que el señor Torres Arzola ocupaba una plaza en el área de Mayagüez y no en Ponce como concluyó el tribunal.

▮ Por la naturaleza de la controversia, en que se trata únicamente de prueba documental en la evaluación de la misma, este Tribunal está en la misma posición que el foro de instancia. *Pueblo* v. *Uriel Álvarez*, 112 D.P.R. 312, 318 (1982); *Castrillo* v. *Maldonado*, 95 D.P.R. 885, 889 (1968); *West India Mach.* v. *Srio. de Hacienda*, 89 D.P.R. 115 (1963); *Central Igualdad, Inc.* v. *Srio. de Hacienda*, 83 D.P.R. 45 (1961).

La prueba demuestra que no existe evidencia de que el señor Torres Arzola fue trasladado oficialmente al área de Ponce de conformidad con las normas del Reglamento de Personal de la Policía. No hay ningún documento que acredite que el traslado fue autorizado por el Superintendente de la Policía. La única prueba documental ofrecida es un memorándum del 30 de septiembre de 1981 del Comandante Interino del Área de Ponce, en el cual se informa lo siguiente:

> Por instrucciones del Cor. Juan E. Rivera, Director, Negociado de Operaciones de Campo, a través del T[e]nte. Cor. Alberto Cubero Méndez, Comandante Area de Mayag[ü]ez, en el día de hoy 30 de septiembre de 1981, hora 8:00 A.M., se incorporó a esta Comandancia de Area el Téc-

nico II, Identificación Criminal Rudersindo Torres Arzola 10-29447, procedente del Area de Mayag[ü]ez.

El Reglamento de Personal de la Policía de Puerto Rico dispone que cuando se efectúa un traslado se le notificaría al empleado con treinta (30) días de antelación, a menos que por situaciones de emergencia o circunstancias imprevistas no se pueda cumplir con este requisito. Reglamento de Personal, Sec. 13.2 (3) (f). En este caso el documento citado anteriormente no constituye el escrito de traslado requerido por el Reglamento de Personal. Tampoco hay prueba de que ocurrieron las circunstancias de emergencias "imprevistas" para que no se cumpliera con esta norma. Del mismo tampoco se puede concluir que su puesto fue trasladado a Ponce de acuerdo con las disposiciones vigentes en el Gobierno de Puerto Rico. De hecho, la carta de destitución preparada por el Superintendente Cartagena fue enviada al recurrido por conducto del Comandante del área de Mayagüez, ya que el puesto pertenecía a dicha área. De los documentos admitidos lo único que se puede concluir es que al momento de la destitución el recurrido prestaba interinamente servicios en el área de Ponce por instrucciones verbales del Comandante Juan E. Rivera.

De este análisis se desprende que el Superintendente cumplió con la sentencia original del tribunal de instancia al reinstalar al señor Torres Arzola a su puesto en Mayagüez. Aunque entendemos la preocupación del ilustrado magistrado, erró al intervenir en la determinación del Superintendente sobre cómo reinstalaría al señor Torres Arzola. En ausencia de una alegación de una actuación contraria al Reglamento de Personal de la Policía o de la Ley de Personal o en violación de la Constitución, el tribunal a quo debió haber declarado sin lugar la moción de desacato.

Por estas razones *se expedirá el auto de certiorari y se revocará la resolución y orden del 24 de julio de 1985 del tribunal de instancia.*

El Juez Asociado Señor Negrón García emitió opinión concurrente. El Juez Asociado Señor Rebollo López emitió voto explicativo de conformidad. El Juez Asociado Señor Alonso Alonso no intervino.

—O—

Opinión concurrente emitida por el Juez Asociado Señor Negrón García.

## I

Reafirmamos los pronunciamientos sobre la dinámica peculiar de mayor elasticidad operacional en que se apuntala la amplia discreción del Superintendente para ordenar traslados de miembros de la Policía, según vertidos en nuestro voto explicativo emitido en *Carle García* v. *Supte. de la Policía*, 114 D.P.R. 667, 672–675 (1983). Allí nos negamos a revisar al Tribunal Superior, Sala de Humacao, que dictaminó la ilegalidad de un traslado efectuado el 19 de agosto de 1980, que por razones de carácter político, "se acordó y materializó a raíz de la visita a Vieques de la máxima jerarquía de la Policía, incluso el Primer Ejecutivo". Íd., pág. 676.

En el caso de autos, el traslado del recurrido Torres Arzola no se debió a razones políticas. En este sentido, la opinión del Tribunal se adhiere a una mesurada metodología jurídica de no especular innecesariamente sobre consideraciones exógenas y al margen del caso.

## II

Ausente toda controversia sobre traslado político, nos abstenemos, pues, de opinar "a destiempo" sobre alternativas que, de ser adoptadas por la Asamblea Legislativa, podrían retornar a este foro a través de planteamientos constituciona-

les. "Más allá de su aspecto negativo, en sus variadas definiciones idiomáticas y valor semántico [prejuzgar] denota 'juicio previo', 'juicio anticipado' o 'juicio a destiempo'. Un autor nos habla de '. . . la expresión de *pre-concepto*, que no es otro que aquel que luego atribuiremos a *pre-opinión*. Tiene gran interés, en cambio, percibir la diferencia entre 'juzgar antes de tiempo' y adoptar una decisión 'previamente a los hechos o argumentos que deben conocerse'; una cosa es juzgar 'antes de tiempo', esto es, adelantándose *extemporáneamente*, y otra muy distinta el *haber tenido que juzgar previamente*, pero sin salirse del marco del deber jurídico; *de igual manera que habremos de distinguir del juzgamiento realizado en virtud de la investidura de magistrado judicial, el concepto emitido como simple ciudadano o, al menos, sin formar parte de esa magistratura'*. (Énfasis suplido.) S. Sentís Melendo, *Estudios de Derecho Procesal*, Buenos Aires, Ediciones Jurídicas Europa-América, 1967, T. 1, pág. 241." *Santiago* v. *Superintendente de la Policía*, 112 D.P.R. 205, 215 (1982).

El juicio "previo, anticipado o a destiempo" es un curso procesal peligroso en el caso de autos. Nos explicamos.

El Art. IV, Sec. 4 de la Constitución confiere al Gobernador de Puerto Rico la responsabilidad de "[c]umplir y hacer cumplir las leyes". A su amparo, tradicionalmente el estatuto rector de la Policía le ha reconocido al Primer Ejecutivo "[l]a autoridad suprema en cuanto a [su . . .] dirección . . . , pero la administración y dirección inmediata de la organización estará bajo un Superintendente". 25 L.P.R.A. sec. 1004. En virtud de este diseño fundamental vigente, hemos sostenido que un gobernador reelecto no viene obligado a enviar al Senado de Puerto Rico para consejo y consentimiento la nominación de los secretarios de gabinete y otros funcionarios que desea retener, incluso al Superintendente de la

Policía, nombrados en un cuatrienio anterior. *Hernández Agosto* v. *Romero Barceló*, 112 D.P.R. 407 (1982).(¹)

En estas circunstancias, ¿cabe el riesgo de formular una opinión consultiva basada en conjeturas de opciones al término de duración del cargo de Superintendente, que imperativamente requieren calibrar intereses constitucionales? *E.L.A.* v. *Aguayo*, 80 D.P.R. 552, 558–560 (1958); *Com. de la Mujer* v. *Srio. de Justicia*, 109 D.P.R. 715, 721–722 (1980).

### III

Finalmente, para el jurisprudente, la aplicabilidad rigurosa o no de la norma de abstención judicial respecto a decisiones administrativas emana de principios elementales de Derecho constitucional y administrativo. En fiel juridicidad, la adjudicación objetiva no puede descansar en criterios ad hoc elaborados sobre esquemas o ideales inexistentes. Tampoco en posturas individuales, que aunque bien intencionadas, tienden a desarticular un ordenado y eficiente funcionamiento de las labores de las agencias administrativas. Cada caso es único y debe ser evaluado en los méritos singulares de sus hechos. Por ende, rechazamos la errónea generalización —basada en la premisa inarticulada— de que, a menos que se enmiende la actual ley de la Policía, toda decisión administrativa de un superintendente sobre personal está matizada de prejuicio político por una alegada falta de independencia. Tal hipótesis es inaceptable. Por extensión pone en entredicho la corrección de las decisiones y determinaciones administrativas adoptadas por casi todas las agencias adscritas al Poder Ejecutivo.

---

(¹) Estos funcionarios, contrario al Contralor de P.R. —que responde al Poder Legislativo— están bajo la autoridad directa del Poder Ejecutivo. Es cuestionable equiparar al Contralor con el Superintendente de la Policía bajo el enfoque de que no están igualmente situados.

—O—

Voto explicativo de conformidad emitido por el Juez Asociado Señor Rebollo López.

He dado mi conformidad a la opinión que emite el Tribunal en el presente caso por considerar que los principios enunciados, y el resultado a que se llega en la misma, son jurídicamente correctos. Somos del criterio que ninguna persona puede cuestionar la corrección —en teoría— de la aseveración a los efectos de que "esos cuerpos [como la Policía de Puerto Rico] requieren una *flexibilidad operacional y total movilidad de su personal* para responder rápidamente a las necesidades del país"; que por "la *naturaleza de la Policía* es entendible el interés legislativo de otorgarle a sus funcionarios *la mayor flexibilidad posible* en los *aspectos operacionales* que rigen *el traslado* de sus miembros", y que en "casos en que se trate de *los traslados, los tribunales deben limitar el grado de su intervención* y así permitir que el sistema pueda responder adecuadamente a las necesidades del país de fortalecer los programas de seguridad pública. Su intervención *debe ser limitada* a evitar actuaciones arbitrarias y caprichosas o en violación a los reglamentos de la entidad o para garantizar la protección y el respeto de los derechos consagrados en las constituciones del Estado Libre Asociado y Estados Unidos de América". (Énfasis suplido.) Por otro lado, un examen de los hechos particulares del caso demuestra que el resultado a que se llega en el mismo es correcto. Por eso, repetimos, suscribimos la opinión del Tribunal.

## I

Entendemos oportuno y necesario, sin embargo, expresarnos sobre la disposición de la Ley Orgánica de la Policía relativa a la "permanencia" en el cargo de Superintendente de dicho cuerpo; disposición que ha contribuido grandemente a que en los últimos años exista un estado de desasosiego e ines-

tabilidad en la institución de gobierno encargada de la protección de la vida y la seguridad de nuestro Pueblo.

El Pueblo de Puerto Rico ha sido, y es, testigo del poco éxito obtenido en las últimas dos décadas por las personas que han ocupado el cargo de Superintendente de nuestra Policía. ¿Se debe ello acaso a que las diferentes personas que han decidido emprender el gran sacrificio personal y económico que representa aceptar dicho cargo han sido todas personas incompetentes? *No lo creemos así.* La mejor prueba de ello son las propias personas que han desempeñado dicho puesto: todas han tenido éxito en las otras encomiendas y empresas que han realizado, tanto con anterioridad como con posterioridad a ocupar el cargo de Superintendente de la Policía de Puerto Rico.

¿A qué se deben entonces los fracasos? Somos del criterio que uno de los factores principales para la continua ocurrencia de los mismos ha sido la disposición pertinente de la Ley Orgánica de la Policía que clasifica el cargo de Superintendente como uno de "confianza" y, por ende, sujeto a los resultados eleccionarios cada cuatro años.

El Superintendente de la Policía es el "guardián y custodio" de la tranquilidad y del bienestar físico de nuestros conciudadanos. La persona que ocupa dicho cargo debe ser un profesional capacitado cuya permanencia en el mismo y la razón de ser de sus decisiones no pueden depender de los gustos y preferencias de los líderes de turno en el poder en nuestro país. A dicho funcionario debe proveérsele todas las herramientas necesarias para que así pueda lograrlo. Una de ellas sería proporcionándole *estabilidad en su cargo por medio de un nombramiento por término fijo,* suficientemente largo que lo haga inmune a influencias indebidas y que le permita dedicar todos sus esfuerzos a la difícil labor que hay que realizar en la guerra contra la criminalidad.

Dicha idea no es nueva ni extraña en Puerto Rico. La misma es la que animó a la Asamblea Constituyente a crear

el cargo de Contralor de Puerto Rico con un término fijo de duración de diez (10) años para que este funcionario pudiera fiscalizar las distintas agencias e instrumentalidades guber-namentales y municipios de Puerto Rico con total y absoluta independencia de criterio. Véase Sec. 22 del Art. III de la Constitución del Estado Libre Asociado de Puerto Rico. No podemos concebir que nadie pueda pensar que una sana y efi-ciente situación fiscal es más importante y fundamental que la vida y seguridad de nuestros ciudadanos.

Los jueces que componen este Tribunal no pueden darse el lujo de encerrarse en un edificio sin ventanas con total abs-tracción de lo que sucede a su alrededor. No le debemos dar la espalda y hacer caso omiso a lo que hace tiempo constituye un secreto a voces en nuestro país: cada cuatro años ocurre un "desplazamiento" de miembros de la fuerza policiaca ha-cia posiciones de poder o de insignificancia dentro de la misma; ello por razones totalmente ajenas a la capacidad profesional, grado de eficiencia y ejecutorias de dichos fun-cionarios públicos. Dicho "desplazamiento" se debe, en gran medida, al cambio de mando en la superintendencia que por lo general ocurre cada cuatro años. No se necesita ser un ex-perto en materia de personal para poder decir que la referida situación no le hace ningún bien ni a la Policía ni a Puerto Rico.

## II

Sostenemos, en su consecuencia, que si bien es cierto que la Policía de Puerto Rico, dada la naturaleza de las funciones que desempeña, necesita tener "la mayor flexibilidad posible en los aspectos operacionales que rigen el traslado de sus miembros", no es menos cierto que su jefe máximo necesita tener una total "independencia de criterio" para poder dirigir con éxito y un alto grado de eficiencia dicho cuerpo. Un paso hacia la consecución de ese fin sería enmendando la Ley Or-gánica de la Policía con el propósito de que al Superintendente

pueda extendérsele un nombramiento por un término fijo mayor que el término de cuatro años por el que es electo el funcionario que lo nomina a dicho cargo, el Gobernador de Puerto Rico.(¹) Ello, en adición a inmunizar al cuerpo policiaco contra presiones e influencias ajenas a una sana administración pública, le permitiría al funcionario elegido el poder implantar programas de mejoramiento a largo plazo en la institución.

No nos causa preocupación el hecho de que se nos impute emitir "opiniones a destiempo" y el considerar criterios que "en fiel juricidad" no son propios, por cuanto dicho señalamiento no sólo es erróneo sino que es además absurdo. Toda norma de "abstención judicial" es en realidad una norma de "prudencia judicial", y para actuar con "prudencia" se debe analizar el cuadro de hechos o circunstancias dentro de la cual se habrá de realizar nuestra actuación. Recordemos que el aplicar una norma de abstención a una situación que no lo amerita, puede representar la abdicación de la función judicial. En conclusión, creemos que es "poco prudente" aplicar indiscriminadamente y con todo su vigor una norma rigurosa de no intervención respecto a la Policía mientras ésta funcione dentro de un marco estatutario caracterizado precisamente por la falta de independencia.

---

(¹) Similar al caso del Contralor en Puerto Rico, en la jurisdicción federal, el director del Negociado Federal de Investigaciones, agencia encargada en esa jurisdicción de mantener el orden público y velar por el cumplimiento de las leyes, es nombrado por un término de diez años, o sea, más del doble del término por el cual es electa la autoridad nominadora, en ese caso el Presidente de Estados Unidos de América. Véase: Pub. L. 90–351, Tít. VI, Sec. 1101 de 19 de junio de 1968, 82 Stat. 236, enmendada por Pub. L. 94–503, Tít. II, Sec. 203 de 15 de octubre de 1976, 90 Stat. 2427.