Alfredo **GONZALEZ VEGA,** et al., **Plaintiffs,**

v.

Rafael **HERNANDEZ COLON,** Andres Garcia Arache, Carlos Lopez Feliciano, and Fernando Marrero, **Defendants.**

**Civ. No. 86–0222 (JAF).**

United States District Court, D. Puerto Rico.

Feb. 10, 1988.

Frank Rodríguez García, Ivonne González, Ponce, P.R., for plaintiffs.

William Reyes Elías, San Juan, P.R., for defendants.

## OPINION AND ORDER

FUSTE, District Judge.

This is an action for injunctive relief, damages and reinstatement pursuant to 42 U.S.C. Section 1983. The 144 plaintiffs, members of the Police Force of Puerto Rico, allege they were transferred within the Puerto Rico Police Department because of their political beliefs and affiliation with the New Progressive Party (NPP), in violation of the first and fourteenth amendments to the United States Constitution. Jurisdiction is invoked pursuant to 28 U.S. C. secs. 1331 and 1333(3) and (4).

The matter is before the court on a motion for summary judgment and the opposition thereto. Based upon the pleadings, motions, supporting documents and memoranda of law, and upon due deliberation, the court hereby enters summary judgment in favor of the defendants and dismisses the complaint.

### The Standard for Summary Judgment

Summary judgment is only proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ. P. 56(c). A factual dispute is material if it "affects the outcome of the litigation," and genuine if manifested by "substantial" evidence "going beyond the allegations of the complaint." *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). In passing on a summary judgment motion, the court must review the record and draw inferences in the light most favorable to the opposing party. *Poller v. Columbia Broadcasting System*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962). A party opposing summary judgment cannot rest on the allegations in the complaint. He must come forward with evidentiary affidavits, or the undisputed statements contained in the movant's affidavits are taken as true. *Smith v. Saxbe*, 562 F.2d 729, 733 (D.C.Cir.1977). Summary judgment is a proper procedural tool that may "secure the just, speedy and inexpensive determination" of a case, where, in consideration of substantive law, there is no issue as to the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Notwithstanding the fact that the recent *Celotex* decision has invited greater use of Rule 56, the test remains a fairly rigorous one. *Greenburg v. Puerto Rico Maritime Shipping Authority*, 835 F.2d 932, 934 (1st Cir.1987).

### Factual Background

These 144 police officers are principally from the Police Academy, the Intelligence Division, the Criminal Investigations Corps, and the Tactical Operations Unit. The re-

mainder hold command positions and still others are rank and file officers within the Police Force. Defendant Andrés García Arache is the former Superintendent of the Police Force. He resigned in January of 1986. Defendant Governor Rafael Hernández Colón appointed defendant Carlos López Feliciano as his substitute in February of 1986. Defendant Fernando Marrero is the Chief of the Bureau of Field Operations.

The Police Force of Puerto Rico consists of over 6,000 members. The Force is divided into nine geographic areas, which are further divided into precincts or districts. On a different level of organization, the Force is composed of various divisions, such as the Intelligence Division, the Tactical Operations Unit and the Criminal Investigations Corps.[1]

Before García was appointed Superintendent, allegations were publicly made that the crime rate in Puerto Rico had increased. The efficiency of the Force was called into question by several groups and individuals. With this background, Andrés García Arache, upon taking office as the Superintendent on June 24, 1985, embarked upon a reorganization of the Police Department. Transfers of police officers were conducted at all levels of the Force. Both the plaintiffs and the defendants agreed on who was transferred from which division and to where they were transferred.[2] Transfers were made from the Police Academy, the Intelligence Division, the Tactical Operations Unit, the Criminal Investigative Corps, and from Command positions and involved other officers, policemen, and civilians.

### Due Process Claim

The plaintiffs contend that these transfers violated their due process right to a pre-transfer hearing. The due process clause of the fourteenth amendment guarantees public employees with a property interest in continued employment the right to an informal hearing prior to being discharged. *Cleveland Board of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). Plaintiffs must first demonstrate they have a property interest to remain employed in their previous positions. In other words, they must show that they cannot be transferred to another position except for cause. A property interest is not derived from the constitution itself, but is created by "existing rules or understandings that stem from an independent source such as state law." *Id.* at 538. We look to the local law and police regulations to determine whether they may be transferred only for cause.

Plaintiffs argue that because they are classified as career employees under the Public Service Personnel Act, 3 L.P.R.A. secs. 1301 *et seq.,* they have a constitutionally protected property interest to continued employment in their previous positions. Defendants argue that under the Personnel Regulations of the Puerto Rico Police (hereinafter "Police Regulations"), Section 13.2, members of the Police Department enjoy no entitlement to work at a certain geographic post, and may be transferred to a different post based upon the needs of the service.

■ While plaintiffs may be correct in concluding that they are career employees,

---

1. Incidentally, the Intelligence Division was dismantled and eliminated very recently. We take judicial notice of that fact. Fed.R.Evid. 201.

2. Compare Defendant's Exhibit 1, Schedule of Transfers, with Plaintiffs' Appendix, Schedules I–VII, Schedules of Transfers. Each schedule contains identical lists of names, rank or classification of the plaintiffs, their positions held, and their reassignments. For instance, Aníbal Cintrón Ruiz, who was transferred from the Humacao Area Community Relations Office to the Naguabo District, complains that he now has to drive about twenty-five minutes every day from his residence to his new job location. *See* Declaration of Aníbal Cintrón Ruiz, Plaintiff, Appendix, p. 556. Most transfers, geographically speaking, were less onerous, and were within the same district or to a nearby district. For example, all those officers from the Arecibo Intelligence Division were transferred within the Arecibo or Florida Districts and all the officers from the Ponce Intelligence Division were transferred within Ponce. Similarly, all the officers from the San Juan Tactical Operations Unit were transferred to San Juan, Bayamón, Carolina, Cataño, Trujillo or Caguas. *See* both Plaintiffs' and Defendants' Schedules of Transfers.

that alone does not answer the question now before the court. Status as a career employee only guarantees the employee will not be dismissed from the career position without "good cause." 3 L.P.R.A. sec. 1336(4) (Supp.1985). There have been no dismissals or demotions in this case. While a career employee may be entitled to continued employment with the Police Force, we find that it does not guarantee continued employment to a single geographic post. See *Hughes v. Whitmer*, 714 F.2d 1407, 1414 (8th Cir.1983) (state statutes did not guarantee trooper to a particular troop within the patrol).

Under the Public Personnel Law, 3 L.P.R.A. secs. 1301 *et seq.*, the Police Force of Puerto Rico is an Individual Administrator. 3 L.P.R.A. sec. 1343(5). The significance of this legislative scheme is that, while an Individual Administrator's personnel system must adhere to the merit principle embodied in the Public Personnel Law, it has the authority to and is required to promulgate its own personnel regulations. 3 L.P.R.A. sec. 1347(1). The courts must give deference to these regulations promulgated to give meaning to the underlying statute involved. The Supreme Court of Puerto Rico recently stated the Police Regulations provide valuable guidance for judicial review:

> When government agencies' enabling statutes contain ample and general rules, the boundaries and scope of their powers should be defined through regulations. Once an administrative body has defined the boundaries of its actions through duly promulgated regulations, it must zealously apply them. Enactment of regulations, however, facilitates judicial review, especially in those areas where the ambit of delegated discretion is excessive.

*Torres Arzola v. Policía de Puerto Rico*, 86 JTS 33 (1986) (certified English translation). Therefore, we must make reference to the applicable Police Regulations, which

will govern the issue of the entitlement to a certain geographic post.

Section 13.2 of the Police Regulations prohibits arbitrary and disciplinary transfers [3], but does authorize transfers in response to the needs of the public service. Plaintiffs concede that the transfers were not made as disciplinary measures, but argue they were an arbitrary exercise of power based upon party affiliation. Plaintiffs' Brief at 48. Section 13.2(1) reads, in pertinent part:

> a) Transfers can be effected ... in response to needs of the public service in situations such as the following:
>
> 1) When the need arises for additional human resources in an agency to take care of new functions or programs or for the enlargement of the programs it develops.
>
> 2) When the services of an employee are necessary in another work unit, to solve a problem or better a service.
>
> 3) When functions or programs are eliminated due to a reorganization in the Puerto Rico Police or in the Government, or when in the process of reduction in force reassigning employees becomes a necessity.
>
> 4) When it is found that the services of an employee can be utilized more fruitfully in another dependency of the Puerto Rico Police or in another agency of the Government due to the employee's knowledge, experience, skills or special qualifications, specially in cases where he has acquired more knowledge and developed more expertise as a result of training.
>
> 5) When the need arises to rotate the personnel of the Puerto Rico Police so they can be trained in other areas.

These regulations give the Superintendent wide but not unfettered discretion to transfer members of the Force to different geographical posts in response to new programs, a reorganization of the Force, a

---

**3.** The Personnel Law prohibits both arbitrary and disciplinary transfers of public employees, but exempts personnel systems, such as that of the Police Department, which use the concept of rank, from the application of this prohibition.

3 L.P.R.A. sec. 1334(5) (Supp.1985). Nevertheless, Police Reg. 13.2 expressly prohibits arbitrary and disciplinary transfers within the Police Force.

need for special skills of an officer, or new training requirements. Moreover, the above five situations listed in the Police Regulations are not the exclusive justifications for transferring police officers. The Police Regulations, under the provisions of section 13.2(1)(a), allow for possible different reasons for conducting a transfer. A member of the Force may be transferred at any time in accordance with the legitimate needs of the public service as determined by the Superintendent, with the exception of arbitrary and disciplinary transfers. *Torres Arzola v. Policia de Puerto Rico,* 86 J.T.S. 533 (1986), is the only Puerto Rico Supreme Court case that construes the Police Regulations at issue here, though it did not involve an allegation of a politically-based transfer. In *Torres Arzola,* the Superior Court ordered the Police Superintendent to reinstate a suspended police officer to his former position with the Criminal Investigations Division. The officer was assigned to Mayaguez. He had been working in Ponce at the time of the infraction that gave rise to his suspension. After the Superintendent reinstated him in Mayaguez, the officer filed a motion for contempt, arguing that he should have been reinstated in Ponce. The Superior Court, after a hearing on the matter, ordered the Superintendent to reinstate the officer in Ponce. The Superintendent appealed that decision. The Supreme Court of Puerto Rico reversed, and held that the Superior Court erred in intervening in the original reinstatement. The Supreme Court said that the courts should limit their intervention in police transfers to unusual circumstances. It quoted Justice Negrón García's explanatory vote in the Supreme Court's denial of certiorari in *Carle García v. Superintendent of Police,* 114 D.P.R. 667, 673 (1983), a case involving an allegation of a politically-motivated police transfer. Justice Negrón explained that under the Police Regulations, the Superintendent enjoys a wide degree of flexibility:

> The phrase "service needs or requirements" coins an eminently practical reality, of a flexible and relative nature. At different times, it can have different meanings or degrees. It includes both compelling and unavoidable situations-where there is hardly any freedom to act and no other course of action-and useful and advisable measures. Also,.such service needs or requirements may be classified as reasonable, practical, economical, etc. There is a wide range of possibilities. It cannot be limited a priori. 114 D.P.R. at 673.

*Torres Arzola v. Policia de Puerto Rico,* 86 J.T.S. 33 (certified English translation). These regulations and their judicial interpretation negate the proposition that a member of the Force has a property interest to a geographic post.

In *Hughes v. Whitmer,* 714 F.2d 1407 (8th Cir.1983), the Eighth Circuit held that a highway patrol officer who was transferred from a troop he was assigned to for ten years to another troop some 200 miles away, did not possess a due process property right to remain in the original patrol troop. Before his transfer, he was not given a list of written charges or an opportunity to rebut the reasons the Superintendent had to transfer him. The state statutes had a provision protecting patrolmen from dismissal absent "cause." The court found this statute only entitled the patrolman to continued employment with the patrol, but not within a particular troop within the patrol. *Hughes,* 714 F.2d at 1414. The statutes also gave the Superintendent discretion similar to the discretion section 13.2 grants to transfer a patrolman from one district to another. The Superintendent had the power to

> assign members of the patrol to such districts in the manner he deems proper ... He shall have authority in his discretion to call members of the patrol from one district to another. Mo.Rev.Stat. sec. 43.120(1) (1978).

Against this statutory scheme, as well as the patrol's practice of telling patrolmen they could be transferred at will, the plaintiff was found not to have due process property interest in his first assignment. *Hughes v. Whitmer,* 714 F.2d at 1414–16. We find that *Hughes* is applicable here.

■ Plaintiffs further argue that at the time of their transfers, they were not noti-

fied of their right to appeal the transfer within thirty days before the Board of Appeals of the Personnel System (J.A.S.A.P.), in violation of the Police Regulations. Police Regulation 13.2(3)(g) reads that the transferring authority, together with the notice of the transfer, should advise the employee "of his right to appeal before the Board, within the period of thirty (30) days, if he feels that his rights have been infringed. The appeal will not have the effect of staying the action of the nominating authority." Although the content of the regulation is not a model of due process to follow, by its own terms the notification contained in this regulation is not mandatory. It requires the transferring authority to notify the police officer only if the officer "feels his rights have been infringed." In other words, the notice provision in the regulation, surprisingly enough, is triggered by the affected policeman's complaint of unfairness. We note that the appeal does not stay the transfer, nor does it give the affected employee the right to a due process pre-transfer hearing. The regulation, in short, does not elevate these transfers to personnel actions tantamount to dismissal, demotion or transfer for causes such as disciplinary problems.

### First Amendment Claim

At this point it is unclear whether the First Circuit recognizes a demotion or transfer as triggering the protections of *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) and *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). The First Circuit granted rehearing *en banc* and vacated the opinion in *Maria M. Agosto v. Aponte Roque,* No. 86–1300, slip op. (1st Cir. Aug. 14, 1987), which held that a demotion in public employment is actionable under section

1983. *See* Order of Court, entered September 21, 1987, consolidating cases 86–1300, 86–1643 and 86–1644.[4] Even though in 1986 we assumed that a transfer was not actionable, *Morales v. Gaztambide,* 641 F.Supp. 142 (D.P.R.1986), we need not pass upon the question of whether these transfers give rise to a first amendment violation cognizable under section 1983. We find that plaintiffs have failed to create a significant factual controversy for Rule 56 purposes on the subject of discrimination related to party affiliation.

The parties agree that the first amendment prohibits political patronage dismissals unless party affiliation is an appropriate requirement for a particular position. *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). Furthermore, the parties accept that party affiliation is not a proper qualification for these police officer positions. In any event, the plaintiffs have the initial burden of demonstrating that their political affiliation was a substantial or motivating factor underlying the Superintendent and Chief's decision to transfer them. *Mt. Healthy City School District v. Doyle,* 429 U.S. 274, 285–87, 97 S.Ct. 568, 575–76, 50 L.Ed.2d 471 (1977); *Rosaly v. Ignacio,* 593 F.2d 145, 148–49 (1st Cir. 1979). If the plaintiffs meet their burden, then the defendants may demonstrate that the plaintiffs would have been transferred regardless of their political affiliation. *Mt. Healthy City School District v. Doyle,* 429 U.S. at 287, 97 S.Ct. at 576.

■ In support of their motion, plaintiffs offer the statements of seventeen police officers. These declarations, which detail the facts upon which each officer claims discrimination, apparently represent a

---

4. The order of the appeals court, in pertinent part, reads as follows:

"Counsel are to respond to the following questions in addition to any other matter that they deem relevant.

(1) Are the protections of *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), and *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), available to em-

ployees who have been demoted, or where employment rewards and responsibilities have been changed because of their political affiliation?

(2) If so, what standards or criteria should be applied in determining which demotions or other changes fall within the rationale of *Elrod–Branti?"*

Oral argument was held on November 4, 1987.

 

cross section of the positions transferred.[5] We have carefully examined each statement. The facts alleged will not support a finding that these officers were transferred because of their political affiliation. Though the rendition in each statement regarding the circumstances surrounding each transfer is different, all of the statements contain largely conclusory allegations that the plaintiffs were transferred because of their membership in the New Progressive Party. They allege that they are members of the NPP; that Popular Democratic Party police officers were treated better, and that they were replaced by PDP officers without naming PDP officers.

The most striking uniformity in all of the statements is the lack of any allegation of political animus on the part of any of the defendants in the transfers. With regard to the defendant governor that is understandable, because the plaintiffs pursue him under a theory of respondeat superior. However, this case becomes less plausible against defendant Carlos López Feliciano, who was appointed the new Superintendent in February of 1986, after Andrés García Arache resigned and after all the transfer orders had been made. The plaintiffs cite López liable because he failed to "prevent the continuous violations" of their rights upon becoming the Superintendent of the Police Force. Plaintiffs' Brief at 54. Andrés García Arache is charged as the "executor of the policy" of the transfers, and Fernando Marrero is alleged liable because he is the Chief of the Bureau of Field Operations and signed a majority of the transfer orders. Plaintiffs' brief at 53–54.

While it may be true that García ordered the restructuring of the Police Force, and ordered transfers himself, and Marrero personally signed many of the transfer orders, this alone will not create a case of political discrimination. Those transfers signed by Marrero were done at the behest of the local commanders, lieutenants or other commanding officers. With the ex-ception of two or three plaintiffs who were longtime members of the Police Force, there is no evidence that either of the above defendants had even personal knowledge of the political affiliation of these plaintiffs. Indeed, the upshot of these declarations is that only the local commanders had any knowledge of either their political affiliation or their individual working situations.

Against this background, plaintiffs have failed to satisfy their initial burden under *Mt. Healthy* and, therefore, have failed to demonstrate that their political affiliation played a role in their transfers. The plaintiffs have not demonstrated a genuine factual controversy regarding political discrimination. Accordingly, defendants' motion must be granted and the case dismissed.

Judgment will be entered for the defendants.

IT IS SO ORDERED.

---

5. The breakdown of the positions represented in the declarations is as follows: Police Academy, 3; Intelligence Division, 4; Tactical Operations Unit, 3; Criminal Investigations Corp, 1; Bu-reau of Criminal Affairs, 1; Humacao Area Athletic League, 1; Humacao Community Relations Office, 1; Technical Information, 1; District Commander, 1; and Sargeant, 1.