EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| José Emilio Pérez Guzmán<br><br>    Peticionario<br><br>                v.<br><br>Pedro Rosselló González, et al.<br><br>    Recurridos | Certiorari<br><br>2004 TSPR 119<br><br> 162 DPR _____ |

Número del Caso: CC-2004-554

Fecha: 14 de julio de 2004

Tribunal de Circuito de Apelaciones:

                  Región Judicial de San Juan

Panel integrado por su Presidente, el Juez Gierbolini y los Jueces Rodríguez Muñiz y Negroni Cintrón

Abogado de la Parte Peticionaria:

                  Lcdo. Oronte Oliveras Sifre

Abogado de la Parte Recurrida:

                  Lcdo. Luis Estrella Martínez

Materia: Recurso Extraordinario Impugnación a Candidatura a Gobernador

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

José Emilio Pérez Guzmán

    Peticionario

      v.

                                  CC-2004-554

Pedro Rosselló González, *et al.*

    Recurridos

RESOLUCION

En San Juan, Puerto Rico, a 14 de julio de 2004.

I.

Durante el mes de febrero del año 2003, el Dr. Pedro Rosselló González (en adelante Rosselló González) anunció públicamente su aspiración a la candidatura a la gobernación de Puerto Rico por el Partido Nuevo Progresista (en adelante P.N.P.). El 31 de julio de 2003, el Sr. José E. Pérez Guzmán presentó una querella ante la Comisión Estatal de Elecciones (en adelante C.E.E.) alegando que el Dr. Rosselló González no cumplía con el requisito de residencia que exige el Art. IV, Sec. 3, de nuestra Constitución a todo aquel que desee aspirar al cargo

de Gobernador del Estado Libre Asociado de Puerto Rico. El 20 de agosto de 2003 la C.E.E. notificó al señor Pérez Guzmán que, tratándose de unas primarias donde se seleccionaría el candidato a Gobernador por el P.N.P, su querella había sido desestimada por falta de "legitimación activa" al este no ser elector activo de dicho partido. La C.E.E. le informó al señor Pérez Guzmán que, a tenor con el Art. 1.016 de la Ley Electoral de Puerto Rico, Ley Num. 4 de 20 de diciembre de 1977, de no estar conforme con la mencionada resolución, tenía derecho a acudir en revisión judicial ante el Tribunal de Primera Instancia dentro de los diez (10) días siguientes a la notificación de la misma. El 1 de agosto de 2003 la C.E.E. certificó al Dr. Rosselló González como aspirante a primarias por el P.N.P. al cargo de gobernador.

El señor Pérez Guzmán no acudió en revisión judicial. En su lugar, el 26 de marzo de 2004, transcurridos aproximadamente siete (7) meses desde la desestimación de la querella, presentó, por derecho propio, una demanda ante el Tribunal de Primera Instancia donde solicitó entre otras cosas, y bajo argumentos similares a los esbozados ante la C.E.E., "*que se declare inconstitucional la candidatura a la gobernación del Dr. Pedro Rosselló y se le ordene a la Comisión Estatal de Elecciones que le retire la*

*certificación expedida para dicha candidatura"*.[1] (Énfasis nuestro.) Es decir, con su acción civil lo que verdaderamente solicitaba el señor Pérez Guzmán era que se pasara juicio sobre la certificación emitida por el Presidente de la C.E.E. que autorizaba la candidatura a la Gobernación del Dr. Rosselló González. Oportunamente, el Comisionado Electoral del P.N.P., Lcdo. Thomas Rivera Schatz, como miembro de la co-demandada C.E.E., presentó, ante el foro de instancia, una solicitud de desestimación por falta de jurisdicción, a la que se unió el P.N.P. y el Dr. Rosselló González. Celebrada vista, y luego de evaluar los planteamientos de las partes, el 22 de abril de 2004 el Tribunal de Primera Instancia dictó sentencia desestimando con perjuicio la demanda presentada por el señor Pérez Guzmán por éste no haber cumplido con el término jurisdiccional para solicitar revisión judicial de una determinación de la C.E.E. provisto por el Art. 1.016 de la Ley Electoral, *supra*. Además, dicho foro señaló que aun adoptando el argumento del señor Pérez Guzmán a los efectos de que nos encontramos ante una acción independiente de impugnación judicial, ajena a la revisión judicial de la determinación de la C.E.E., el resultado sería el mismo por ser de aplicación al caso ante nos la doctrina de incuria. Oportunamente, el señor Pérez Guzmán radicó una

---

[1] Véase, Demanda, Apéndice 1 del Alegato del Peticionario.

solicitud de reconsideración la cual fue declarada no ha lugar el 28 de abril de 2004.

Insatisfecho, el señor Pérez Guzmán acudió, por derecho propio, ante el Tribunal de Apelaciones mediante recurso de certiorari. Por considerar que la decisión recurrida era esencialmente correcta, dicho foro denegó la expedición del auto solicitado conforme a la Regla 40 del Reglamento Transitorio del Tribunal de Apelaciones. El señor Pérez Guzmán presentó una moción de reconsideración ante dicho foro la cual fue declarada no ha lugar el 8 de junio de 2004, archivándose en autos copia de su notificación el 10 de junio de 2004.

Inconforme, el 21 de junio de 2004 el señor Pérez Guzmán acudió ante nos mediante recurso de certiorari. En esencia, sostiene que erró el Tribunal de Apelaciones al confirmar la sentencia del Tribunal de Primera Instancia sin celebrar vista evidenciaria donde se verificase si el Dr. Roselló González posee las cualificaciones necesarias para aspirar al cargo de Gobernador del Estado Libre Asociado de Puerto Rico. Oportunamente, el Comisionado Electoral del P.N.P., Lcdo. Thomas Rivera Schatz, como miembro de la co-demandada C.E.E., presentó ante este foro un memorando en oposición a la expedición del auto y una solicitud de desestimación por falta de jurisdicción.

Del anterior trasfondo procesal surge que la demanda presentada ante el Tribunal de Primera Instancia por el señor Pérez Guzmán intenta cuestionar a destiempo, es decir, siete (7) meses después, la certificación emitida por la C.E.E que acredita al Dr. Rosselló González como candidato a la Gobernación del P.N.P. Conforme al Art. 1.016 de la Ley Electoral, *supra*, el peticionario contaba con tan solo diez (10) días para solicitar la referida revisión judicial, no podía pues, utilizar como subterfugio una alegada "acción independiente", y esperar siete (7) meses, para cuestionar el dictamen de la C.E.E. Así las cosas, tanto el foro de instancia, como el foro apelativo intermedio, actuaron correctamente al declararse sin jurisdicción para entender en el asunto. Por ende, este tribunal tampoco tiene jurisdicción para atender el asunto en los méritos.

## II.

Ahora bien, aun considerando que nos encontramos ante una acción independiente de impugnación judicial, ajena a la revisión judicial de la determinación de la C.E.E., el resultado sería el mismo por ser de aplicación al caso ante nos la doctrina de incuria.

Se entiende por incuria (laches) la "dejadez o negligencia en el reclamo de un derecho, la cual en conjunto con el transcurso del tiempo y otras circunstancias que causan perjuicio a la parte adversa,

opera como un impedimento en una corte de equidad". *IM Winner, Inc. v. Mun. de Guayanilla*, res. el 17 de mayo de 2000, 2000 T.S.P.R. 74, 2000 J.T.S. 86; *Colón Torres v. A.A.A.*, 143 D.P.R. 119, 124 (1997); *Pueblo v. Valentín,* 135 D.P.R. 245, 255-256 (1994), *Aponte v. Srio. De Hacienda, supra*, a la pág. 618.

En *Pueblo v. Valentín, supra*, citando con aprobación lo dispuesto en *Torres Arzola v. Policía de Puerto Rico*, 117 D.P.R. 204, 209 (1986), establecimos que:

> ... no basta el transcurso de un tiempo determinado para que exista lo que se denomina técnicamente incuria o laches. **Es imprescindible que la conducta negligente del peticionario, al no promover con prontitud y diligencia la expedición del auto, haya causado una demora innecesaria e indebida que de hecho perjudica a las demás personas interesadas. <u>Adviértase que la teoría de laches envuelve dos elementos: (1) la dilación injustificada en la presentación del recurso; y (2) el perjuicio que ello pueda ocasionar a otras personas, según las circunstancias.</u>** Además, hay que considerar el efecto que tendría la concesión o la denegación del auto sobre los intereses privados y sociales en presencia. Cuando la demora no perjudica a nadie o el perjuicio causado es leve, si se le compara con el daño que sufriría el peticionario o el público en caso de no librarse el auto, el lapso de tiempo transcurrido tiene que ser grande para que exista la incuria equitativa. En cambio, aunque la dilación sea relativamente corta, si resulta en detrimento para el interés público o los derechos individuales del acusado, procede denegar el auto a base de la doctrina de laches. **Sobre todo[,] es preciso tener en cuenta los méritos y demás circunstancias del caso específico, ya que la doctrina de incuria sigue vinculada a la idea fundamental de la equidad: se acude a la "razón" y a la "conciencia" para encontrar**

**soluciones justas, apartándose del rigorismo intransigente de los términos fatales**.(Énfasis suplido.)

En el presente caso, el señor Pérez Guzmán incurrió en una dilación injustificada en la presentación de su reclamación ante el foro de instancia al esperar, sin apoyo en base legal alguna, al 26 de marzo de 2004 para solicitar la descalificación del Dr. Roselló González como candidato a Gobernador por el P.N.P, no empece a conocer del regreso de éste a la política partidista desde agosto de 2003. Sin lugar a dudas, de acogerse los planteamientos del peticionario, en estos momentos, se causaría un perjuicio indebido a la mencionada institución política y a los electores que esta representa, al estos tener que seleccionar un nuevo candidato a gobernador a tan solo cuatro (4) meses de las elecciones generales.

III.

Siendo ello así, considerada la *Petición de Certiorari,* así como el *Memorando en Oposición a la Expedición del Auto y Solicitud de Desestimación por Falta de Jurisdicción* presentado en el caso de epígrafe, el Tribunal desestima el recurso por falta de jurisdicción.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López está "conforme con el <u>resultado</u> al que se llega en la misma, aun cuando difiere de algunos de los

fundamentos    jurídicos    expuestos    en    la    referida

resolución". El Juez Asociado señor Fuster Berlingeri

disiente con opinión escrita.


                                    Patricia Otón Olivieri
                              Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

José E. Pérez Guzmán

    Demandante-Peticionario

       vs.                                    CC-2004-554
     Certiorari

Pedro Rosselló González,
Etc.

    Demandados-Recurridos

Voto Disidente emitido por el JUEZ ASOCIADO SEÑOR FUSTER BERLINGERI.

     San Juan, Puerto Rico, a 14 de julio de 2004.

     En el caso de autos, el peticionario José E. Pérez Guzmán presentó una demanda ante el Tribunal de Primera Instancia mediante la cual alegó *inter alia* que el Dr. Pedro Rosselló, junto con su esposa, se fue de Puerto Rico en enero de 2001 para los Estados Unidos para trabajar y vivir allá; que compró una residencia en el estado de Virginia para morar allí, por la cual pagó alrededor de un millón de dólares; que alquiló por plazo indefinido su residencia en Puerto Rico; y que declaró en sus planillas de ingreso de los años 2001, 2002 y 2003 que no era residente de Puerto Rico. Sobre la base de éstas y otras alegaciones, Pérez Guzmán adujo que el Dr. Rosselló no cumplía con el requisito

constitucional para poder ocupar el cargo de Gobernador de Puerto Rico de haber sido residente *bona fide* de Puerto Rico durante los cinco años anteriores a la fecha de su elección.

La demanda aludida de Pérez Guzmán fue desestimada por los foros *a quo*, por lo que recurrió ante nos. Una mayoría de este Tribunal ha denegado su recurso por entender que Pérez Guzmán no impugnó la candidatura del Dr. Rosselló expeditamente. Disiento de ese dictamen, por las razones que expongo a continuación.

II

Según los hechos del caso de autos, Pérez Guzmán presentó su **acción judicial** aproximadamente **ocho meses** después que la Comisión Estatal de Elecciones certificara al Dr. Rosselló **como aspirante a primarias** por el P.N.P. para el cargo de Gobernador, certificación que se emitió el 1 de agosto de 2003. Estima la mayoría del Tribunal que Pérez Guzmán tardó demasiado para incoar tal acción. Yo difiero de ese juicio.

La fecha realmente decisiva para determinar si fue tardía o no la acción judicial del peticionario para impugnar la candidatura a Gobernador del Dr. Rosselló es el **8 de diciembre de 2003**, cuando la Comisión Estatal de Elecciones finalmente certificó tal candidatura. Antes de esa fecha se conocía que el Dr. Rosselló intentaba aspirar al cargo referido, por lo que participó en unas primarias, pero éste no ostentaba aún dicha candidatura oficialmente.

Antes del 8 de diciembre de 2003, la impugnación hubiese sido jurídicamente **prematura**. No existía hasta entonces la certeza legal necesaria de que el Dr. Rosselló sería **candidato a Gobernador** como para que su candidatura se pudiese impugnar judicialmente.

Por lo anterior, la pregunta crucial en lo que aquí nos concierne es si el pleito incoado por Pérez Guzmán el **26 de marzo de 2004** es irremediablemente tardío, a la luz de la doctrina de incuria. Es decir, **¿constituye una dilación injustificada que amerite desestimar su acción judicial el hecho de que Pérez Guzmán esperó tres meses y dos semanas para presentar su pleito contra el Dr. Rosselló?**

En mi criterio, Pérez Guzmán pudo ser más diligente y debió serlo. Sin embargo, su acción judicial trata de un asunto **del mayor interés público** y la cuestión de si su pleito es tardío o no tiene que juzgarse necesariamente a la luz de la enorme importancia que reviste este asunto para el país. Se trata nada menos que de la **legitimidad** de una de las candidaturas principales para los próximos comicios de Puerto Rico. **Está en juego, por ende, la arguible nulidad de una elección, de resultar favorecido el Dr. Rosselló.**

El requisito que debe cumplir cualquier candidato a Gobernador, de ser residente *bona fide* de Puerto Rico durante los cinco años precedentes a la fecha de su elección, es uno que existe comúnmente en las constituciones de los estados de la Unión americana. En efecto, cuarenta y tres estados de Estados Unidos tienen requisitos de

residencia para el cargo de Gobernador del estado, **y veintinueve estados requieren una residencia de cinco años o más**. <u>Chimento v. Stark</u>, 353 F. Supp. 1211, 1217 (1973). El requisito que establece nuestra propia Constitución, **tomado del que existía en la Carta Orgánica Jones**[2], fue objeto de extensas discusiones en la Convención Constituyente de Puerto Rico. **No hay duda alguna del significado de este requisito**. Lo expresó con claridad el delegado Reyes Delgado en uno de los debates sobre el particular:

> Los cinco años se refieren a residencia. . . el compañero Gutiérrez Franqui aclaró, con bastante certeza, ese aspecto de la palabra "residente". . .son muchos los Estados donde, para ocupar cargos públicos, se exige más de un año, dos años, y tres años de residencia. . .
>
> Aquí no estamos pidiendo residencia distinta para un ciudadano que se ha hecho ciudadano americano aquí en Puerto Rico, o que ha venido de los Estados Unidos ya hecho ciudadano, o que se naturalizó ciudadano allá. No hay diferencia en cuanto a la ciudadanía. Lo mismo da que sea un ciudadano de un estado que de otro, nacionalizado o no. Es que debe tener cinco años de residencia. Por ejemplo, un puertorriqueño que ha nacido aquí, se va a los Estados Unidos, está veinticinco años, vuelve aquí, no es razonable, que sin conocer los problemas del país, se le vaya a designar para el cargo de Gobernador. Se le exige a ése cinco años de residencia también. . ."

El historial del requisito constitucional en cuestión hace claro que la residencia exigida es de **cinco años consecutivos de habitar en Puerto Rico**. Alude a radicar cinco años consecutivos en la isla antes de la fecha de la

---

[2] Véase, Fernos Isern, *Original Intent in the Constitution of Puerto Rico*, (2002) pág. 79.

elección. **No los satisface quien se ha ido a morar un par de años en otro lugar fuera del país**.

A la luz de este claro historial del requisito aludido, de comprobarse judicialmente las alegaciones de Pérez Guzmán, podría resultar que el Dr. Rosselló **NO CUMPLA** con el requisito constitucional de residencia. En derecho es claro que una persona puede tener varios lugares de residencia. **Pero es igualmente claro que una persona puede dejar de ser residente de algún lugar si se muda de ese lugar y deja de tener los vínculos de vecindad necesarios para ello**. Más aun, el propio Tribunal Supremo de Estados Unidos ha validado que la jurisdicciones estatales fijen requisitos para candidatos a Gobernador de hasta **siete años de residencia**. Chimento v. Stark, 94 S Ct. 125 (1973). Las alegaciones de Pérez Guzmán en este caso, si se evidencian debidamente en una vista judicial, ciertamente establecerían una presunción de que el Dr. Rosselló dejó de ser residente de Puerto Rico durante dos años, por lo que éste tendría que rebatir satisfactoriamente esa presunción con la prueba pertinente para poder permanecer válidamente como candidato a Gobernador. Debe tenerse en cuenta de que no se trata aquí de un requisito para ser **elector**, con respecto al cual la doctrina federal exige términos cortos, Dunn v. Blumstein, 405 US 330 (1972), sino de un requisito para ocupar el más alto puesto del gobierno, de mayor duración, que la inmensa mayoría de los estados de la Unión

americana tienen igualmente en sus propias constituciones, y que el Tribunal Supremo federal considera válido.

La controversia de este caso es, pues, una cuestión que es menester dilucidar judicialmente. La contienda electoral que se avecina no debe quedar sujeta a la posibilidad de que su resultado esté manchado por la sombra de una deficiencia constitucional. Para proteger la integridad del proceso electoral, este asunto debe clarificarse judicialmente. El requisito de residencia en cuestión no lo establece un reglamento electoral o un estatuto del país sino la propia Constitución del Estado Libre Asociado de Puerto Rico. No debe este Foro abdicar en el caso de autos su función más importante de velar porque se respete y obedezca nuestra ley más fundamental. La vagarosa doctrina de incuria, que es de origen y naturaleza judicial, no presenta obstáculos insalvables que impidan nuestra intervención aquí, sobre todo cuando se toma en cuenta que una de las raíces de esa misma doctrina procura precisamente la protección del interés público. <u>Torres Arzola v. Policía de Puerto Rico</u>, 117 D.P.R. 204 (1986). **<u>Todavía queda tiempo para actuar</u>**.

Es por lo anterior que yo aplicaría aquí la doctrina de incuria con la flexibilidad que este importantísimo asunto requiere. De ese modo expediría el recurso solicitado, a los fines de ordenar que el tribunal de instancia celebre de inmediato una vista para recibir la prueba correspondiente y así, de manera pronta, escuchar

con urgencia a todas las partes para verificar judicialmente si los hechos del caso se ajustan a lo alegado.

Como la mayoría del Tribunal resuelve de otro modo, yo disiento.


                                        JAIME B. FUSTER BERLINGERI
                                              JUEZ ASOCIADO